# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SYMBOL TECHNOLOGIES, INC.,

             Plaintiff,

v.

INTERMEC TECHNOLOGIES CORP.,

             Defendant.

05 C 0256 C

JURY TRIAL DEMANDED

---

### DEFENDANT INTERMEC TECHNOLOGIES CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C., § 1404(A)

---

### INTRODUCTION

Symbol's[1] Opposition to Intermec's Motion to Transfer Venue fails to explain why it filed two actions against Intermec in the Federal Court in Delaware in March and then filed a third case in this Court in April, even though neither corporation is incorporated or has offices here.  Symbol first filed an action (*Symbol Technologies Inc. v. Intermec Technologies Corp.*, C.A. No. 05-146 (D. Del. March 10, 2005) (the "Delaware Contract Action") asking the Court for a declaratory judgment that it was entitled to terminate an OEM Agreement between the parties, thus permitting it to file suits for patent infringement despite the covenant not to sue contained in that agreement.  Intermec counterclaimed in Delaware for breach of contract.  The decision of the Delaware District Court will likely be dispositive of certain defenses in this action.  Symbol also filed the Symbol Delaware Action against Intermec at the same time, alleging that products later accused of infringement in this action also infringe the other Symbol

---

[1] Intermec adopts the same defined terms, as indicated by initial capitals, as set forth in its Opening Brief.

patents asserted in Delaware. *Symbol Technologies Inc. v. Intermec Technologies Corp.*, C.A. No. 05-147 (D.Del. March 10, 2005).

Thus, Symbol's Opposition is more telling for what it fails to say than for what it actually asserts. When such omissions are considered in the interests of justice, transfer is clearly warranted:

First, without doubt, the Intermec products accused in this case are also accused in the Symbol Delaware Action. *See* Declaration of Arvid Danielson, ¶ 5. Symbol goes to great lengths to show that the Symbol Delaware Action also accuses other Intermec products which do not read bar codes. *See* Declaration of Raymond A. Martino, ¶ 22 (17 of the 24 accused products in Delaware do not have bar code readers). Critically, however, neither Mr. Martino nor Symbol can refute Mr. Danielson's sworn statement that the Intermec bar code readers accused in this action are also accused in the Symbol Delaware Action.[2] As Intermec argued, because the same products are accused in both actions, common issues do exist which warrant transfer and eventual consolidation.[3]

Second, Symbol completely ignores Intermec's argument that possible lost profits damages for the same accused products present common questions that must be considered by the same jury. Intermec Opening Brief, p. 6. Symbol's sole claim is that reasonable royalties for infringement of separate patents could be considered separately. Critically, however, Symbol has not stipulated that it will not seek lost profits damages in either case as to Intermec's accused bar code reader products if the actions proceed separately. Symbol simply ignores that the lost

---

[2] Thus, Symbol's statement on page 16 of its brief that the cases involve "Different Products" is clearly wrong.

[3] Intermec certainly does intend to seek consolidation of this case with the Symbol Delaware Action once transfer is ordered. Even were Chief Judge Robinson to order separate trials as to separate claims or product groups (as Symbol suggests in note 12 to its Opposition), it is highly unlikely that she would order separate juries to consider separate damage awards concerning the same Intermec bar code reader products. Thus, Intermec suggests that

profits issue as to the identical accused Intermec products is an issue common both to this case and to the Symbol Delaware Action.

Third, Symbol is also wrong about its reasonable royalty argument. Even assuming, *arguendo*, that reasonable royalties should be considered separately for separate patents, as Symbol claims, they must still be considered by the same trier of fact. To determine a reasonable royalty, the trier of fact must first determine a reasonable compensation base consisting of the total value of the infringing products. Thus, where the same products are accused of infringing multiple patents, the reasonable royalty calculation presents common issues. Symbol cites no case holding otherwise.

Fourth, there are other common issues involved. Intermec pleaded in its answer in this case an affirmative defense that the accused products were licensed under the OEM Agreement between Symbol and Intermec. *See* Intermec Answer, Statement of Affirmative Defenses, ¶ 8. *See also* OEM Agreement, ¶ 18.d., attached hereto as Exhibit 1. That same defense will apply to the same products in the Symbol Delaware Action. Intermec is entitled to have the defense adjudicated once, rather than to face multiple possibly inconsistent resolutions.

Fifth, Symbol cannot now claim that Delaware is inconvenient. Symbol waived any such argument when it signed the OEM Agreement, which contains a mandatory forum selection clause selecting Delaware. OEM Agreement, ¶ 18.j. Intermec's pleading of the affirmative licensing defense under ¶ 18.d of the OEM Agreement makes this case a "proceeding relating to this Agreement" under that clause. Symbol is incorporated in Delaware. The Delaware forum selection clause appears in *Symbol's* form of OEM Agreement. Because of that clause, this case, like the Symbol Delaware Action and the Delaware Contract Action, should also have been filed

---

consolidation of the claims asserted here with at least the claims asserted in Delaware against the same products, at least for damages, is highly likely if not compelled.

in Delaware. Symbol also sued both Proxim and Hand Held Products for patent infringement in Delaware. (C.A. Nos. 01-801 and 03-102). Symbol's inconvenience claim is hardly believable.

Sixth, Symbol's argument that the technologies at issue in both cases are different applies too stringent a standard. Under this Court's rulings, judicial economy may warrant transfer if the same *general technology* is at issue in both cases, even if different patents claiming different inventions are asserted in each case. Here, because the same products accused here are also involved in the Symbol Delaware Action, at least a general understanding of how those products work will be necessary. Efficient utilization of judicial resources is advanced by having one court learn the technology and adjudicate the entire dispute.

None of Symbol's arguments warrant retaining this case in this district. Symbol filed here because it is forum shopping. Because there this district is not the site of any key event, Symbol's choice of forum is entitled to little weight. The interests of justice mandate transfer to preserve judicial economy and to avoid inconsistent results.

ARGUMENT

I.   **COMMON QUESTIONS OF FACT AND LAW WARRANT BOTH TRANSFER AND CONSOLIDATION OF ALL PATENT INFRINGEMENT CLAIMS ACCUSING THE SAME INTERMEC PRODUCTS.**

Clearly, the products accused of infringement in this action are also accused in the Symbol Delaware Action. Declaration of Arvid Danielson, ¶ 5. Regardless of how many other Intermec products are also accused in the Symbol Delaware Action, Symbol does not and cannot truthfully deny this key fact. No case cited by Symbol in its opposition denied transfer of a patent infringement case to a district where the same products were accused of infringing other patents in pending litigation in which discovery is just commencing.[4]

---

[4] Symbol does cite *John Mezzalingua Assoc., Inc. v. Arris Intern'l., Inc.*, 03-C-353-C (W.D. Wis. July 21, 2003) in which this Court denied transfer to the District of Colorado because of a pending case where discovery had closed

4

Symbol goes to great lengths to establish the differences between this case and the Symbol Delaware Action. In doing so, it misses the point. The key question is the extent of similarities, not the extent of differences. Cases should be transferred and may be consolidated as "related" where they present a common issue of fact or law. *Coffey v. Van Doren Iron Works*, 796 F.2d 217, 221 (7th Cir. 1985) ("By the same token, related litigation should be transferred to a forum where consolidation is feasible"). *See also*, *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent."); *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3rd Cir. 1964) (consolidation appropriate where common questions of fact or law exist). There is no requirement that every issue in the two cases be the same, or even that common issues predominate. *Saudi Basic Industries Corp. v. Exxonmobil Corp.*, 194 F.Supp.2d 378, 416 (D. N.J. 2002). Transfer is warranted where at least one common question of fact or law is sufficiently important that judicial economy will be served and inconsistent results will be avoided if the cases are consolidated. Where the same products are accused of infringing multiple patents in two separate actions, common questions warranting transfer and consolidation necessarily arise, at least concerning damages, regardless of whether underlying technologies are different.

By ignoring Intermec's argument that an award of lost profits necessarily involves common issues, Symbol necessarily concedes it. There is no question that Symbol may recover only one measure of lost profits no matter how many patents (or how many claims) Intermec

---

and "Defendant has not argued that this case could be consolidated ... or that there is a danger of inconsistent judgments." Slip. Op. at 3. Intermec, of course, is arguing both that the claims against the same accused products under all Symbol patents should be consolidated (even if claims as to other accused products are separately tried)

may have infringed.  Lost profits may only be awarded when the patent owner proves that it would have made a sale of its own product "but for" the sale of the infringing product.  *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863 (Fed.Cir. 1985); *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984).  In its opening brief, Intermec detailed how awarding Symbol lost profits damages would require "a reconstruction of the way the market [for the accused products] would have developed in the absence of infringement."  Intermec Opening Brief at 9, *quoting Grain Processing Corp. v. American Maize Products Co.*, 979 F.Supp. 1233, 1236 (N.D. Ind. 1997).  Because Symbol accuses the same Intermec bar code readers in both this action and the Symbol Delaware Action, in the absence of transfer, two juries will have to reconstruct the same market for those products to determine what, if any, sales Symbol lost because of any infringement by Intermec.  Such an inquiry presents, standing alone, sufficient common issues and sufficient possibility of inconsistent results to warrant both transfer and consolidation.[5]  *Coffey*, 796 F.2d at 221.  Symbol nowhere argues otherwise.

Ignoring lost profits, Symbol focuses narrowly on reasonable royalty damages, arguing that "Symbol is entitled to recover damages for infringement of each of those patents."  Symbol Opposition Brief, p. 18, *citing Stickle v. Heublein, Inc.*, 716 F.2d 1550.  The premise of Symbol's argument, however, is wrong.

*Stickle* did not hold that Symbol was entitled to a greater royalty if an Intermec product was shown to have infringed two Symbol patents than it would be entitled to if the same product was only shown to have infringed one Symbol patent.  Nor did *Stickle* hold that common issues do not exist in the process of setting multiple royalties for a product which infringes multiple

---

and that there is a risk of inconsistent results if they are not.  Moreover, the scheduling order in the Symbol Delaware Action was just entered and discovery is just beginning.

[5] Because Symbol nowhere concedes that it will not seek lost profits damages, such proof remains a critical issue.

patents. The holding of *Stickle* is that "the quantum of Stickle's recovery for an infringing fryer does not depend on whether Heublien or HCI is the defendant." 716 F.2d at 1562. In footnote 8, the court noted the following in *dicta*:

> Since the parties treated the mechanical and process patents as a unitary licensing property, we need not consider damages for infringement of each patent individually. Under other circumstances it may well be necessary to determine damages separately for each patent since a patent owner has every right to demand royalties for each patent he holds.

716 F.2d 1562, n.8. The *Stickle* opinion does not further describe how reasonable royalties should be set when the accused product is found to infringe multiple patents. *Stickle* is the sole authority cited by Symbol on this issue.

Common issues persist, however, because reasonable royalties must be calculated with regard to the value of the infringing products:

> A reasonable royalty is the amount that a person who desires to manufacture, use or sell a patented article would be willing to pay as a royalty and yet still be able to make a reasonable profit. * * * The royalty computation involves two steps: (1) determination of a reasonable royalty compensation base, *i.e.*, the total value of the infringing items on which the plaintiffs are entitled to royalty payments, and (2) determination of a reasonable royalty rate to apply to that compensation base.

*Standard Mfg. Co., Inc. v. United States*, 42 Fed.Cl. 748, 759 (Ct.Cl. 1999). Courts have held that reasonable royalties must be determined by a hypothetical negotiation between the patent owner and the infringer. *See Serpentix Conveyor Corp. v. Roth*, 726 F.Supp. 282, 285 (D. Colo. 1989). Such hypothetical negotiations concerning products accused of infringing multiple patents necessarily involve common issues, such as the profits Symbol would demand to "share sales" of the patented products. *Id.* In order to share sales, a royalty has to be set on all of the patents necessary to manufacture or sell the product legally.

In its Opening Brief, Intermec argued that such negotiations could not result in a royalty greater than zero for only one of several patents required to legally manufacture the item in

question. Intermec Opening Brief, p. 10. Again, Symbol completely ignores this basic common sense argument, necessarily conceding it. Were different juries asked to set reasonable royalty rates for the same sales of the same infringing products, Intermec would clearly run the risk of inconsistent results. Symbol is wrong to suggest otherwise.

In addition, Intermec's affirmative licensing defense raises common issues. *See* Intermec Answer, Statement of Affirmative Defenses, ¶ 8. Many of the Intermec bar code readers accused in both cases were manufactured with Symbol scan engines purchased from Symbol under the OEM Agreement. For those products, the OEM Agreement provides:

> No Licenses. No right or license is granted by this Agreement ... except for a limited immunity from suit for infringement of the claims of Symbol patents to the extent that they cover OEM Products, for Buyer to make, have made, use, sell import and export the OEM Products described herein solely in the Territory and solely in the Field of Use.

OEM Agreement, ¶ 18.d. This provision provides Intermec complete immunity from infringement under all Symbol's patents[6] for any product which falls within the "OEM Products" defined in the OEM Agreement.[7] Because many of the accused products fit within this description, the juries in both this case and the Symbol Delaware Action will have to consider the same issue: whether those products are immune from infringement claims. Absent transfer and consolidation, Intermec runs the risk of inconsistent determinations of this issue. That common issue also warrants transfer.

---

[6] The OEM Agreement states: "Symbol Patent Rights shall mean all patent rights, worldwide, owned by Symbol during the term of this Agreement ..." OEM Agreement, ¶ 1.i.

[7] Exhibit 2 to the OEM Agreement defines "OEM Products" to include "Cordless Hand Held Barcode Readers" and "Scanning Integrated Terminals" "configured for portable operation with or without radio or other remote wireless communication." These products are obviously accused in both this action and the Symbol Delaware Action.

8

Symbol cannot deny that these common issues of fact and law exist between this case and the Symbol Delaware Action. Standing alone, these common issues mandate transfer in the interests of justice. *Coffey*, 796 F.2d at 221.

## II.    THIS ACTION HAS LITERALLY NO CONNECTION TO THIS DISTRICT.

Symbol fails to identify a single witness or document or operative fact which occurred in Wisconsin. Symbol's sole argument appears to be that Intermec's sale of some of the accused products in this district is sufficient to prevent transfer under 28 U.S.C., § 1404(a). *See* Symbol Opposition Brief, p. 5.

Such sales, however, only establish the minimum contacts necessary for this Court to exercise jurisdiction. The existence of minimum contacts does not, however, equate to the presence of operative facts in this District preventing transfer under § 1404(a). *Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122, 129 (S.D.N.Y. 2003) (transfer warranted: "it is clear that the operative facts relating to infringement would be found at the defendants' headquarters, because that is where the allegedly infringing products were developed, manufactured and distributed."). Here, the operative facts concerning infringement occurred in Washington, not in Wisconsin, as Symbol erroneously claims.

Moreover, sheer docket speed, while a consideration, will not overcome other factors such as the lack of witnesses or operative facts in the transferor district or a pending case with common issues in the transferee district. *Broadcom Corp. v. Microtune, Inc.*, 2004 WL 503942, *3 (W.D.Wis.) (transfer ordered where the plaintiff "has not identified a single witness in Wisconsin" and plaintiff's "sole stated reason for selecting the Western District of Wisconsin is the relative speed of this Court's docket."); *Heinz v. Frank Lloyd Wright Foundation*, 773 F.Supp. 1219, 1225 n. 7 (W.D. Wis. 1991) ("where other relevant factors favor transfer, relative congestion of court's docket will not preclude transfer"). *See also, Telepharmacy Solutions, Inc.*

9

*v. Pickpoint Corp.*, 238 F.Supp.2d 741, 744 (E.D. Va. 2003) (speedy "docket considerations 'cannot be the primary reason for retaining a case in this district. This Court cannot stand as a willing repository for cases which have no real nexus to this district.'"). Symbol's relative docket speed argument is not sufficient, standing alone, to deny transfer.

Symbol also argues that Intermec has not shown Delaware to be more convenient because no more witnesses are located there than in Wisconsin.[8] This is truly an odd argument for Symbol, a Delaware corporation who wrote into its OEM Agreement a mandatory Delaware forum selection clause and who has recently sued Proxim once and Intermec twice in Delaware. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ("a valid forum-selection clause may waive a party's right to assert his own inconvenience as a reason to transfer a case"); *Seigel v. Homestore, Inc.*, 255 F.Supp.2d 451, 456-57 (E.D. Pa. 2003) ("a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum" negating deference to plaintiff's choice); *The Wilkinson Co. v. Krups North America, Inc.*, 48 F.Supp.2d 816, 818 (N.D. Ill. 1999) ("Wilkinson, however, has waived its own right to a convenient forum by freely entering into" the forum selection clause). *See also Hewlett-Packard Development Co., L.P. v. Emachines, Inc.*, 2005 WL 396615, *3 (W.D.Wis.) ("Once I undertook such an interpretation, even on a relatively minor point, the parties would be deprived of the benefits of their agreement").

The OEM Agreement provides as follows in pertinent part regarding forum selection:

> <u>Choice of Forum</u>. Each Party hereby irrevocably and unconditionally submits itself and its property in any legal action or proceeding relating to this Agreement or for recognition and enforcement of any judgment in respect thereof, to the

---

[8] Intermec's alternative suggestion to transfer the case to the District of Washington clearly would increase the net overall convenience to the parties. Symbol does not argue otherwise. This suggestion was not made as a "throw away" as Symbol suggests. Transfer to Washington would be a better choice than no transfer at all, but not as good a choice as transfer to Delaware.

exclusive general and personal jurisdiction of the courts of the State of Delaware, and any appellate court thereof.

OEM Agreement, ¶ 18.j. Because Intermec has pleaded a license defense under ¶ 18.d of the OEM Agreement, this case is a "proceeding relating to" the OEM Agreement sufficient to render the forum selection clause applicable. Thus, Symbol is estopped from arguing that Delaware is inconvenient as a transferee district. Its inconvenience argument must be rejected.

### III.   THE TECHNOLOGY SIMILARITIES DO WARRANT TRANSFER.

The Symbol Delaware Action is clearly a complex case involving a number of different patents and products. Symbol has striven mightily in its opposition to the instant motion to highlight the differences between issues raised in that case and those raised here. There, are, however, undeniable similarities which justify transfer. Symbol ignores these.

Such similarities can be expected whenever the same products are at issue in both cases. As shown above, the Intermec products accused in this case are all also accused in the Symbol Delaware Action. *See* Section I, *supra*. How those products work will be an issue that the trier of fact in both cases will need to understand. As Intermec explained in its Opening Brief, at least some of the patents in suit in both cases involve bar code scanners as limitations. Intermec Opening Brief, pp. 7-8.

Symbol dismisses these similarities by focusing too narrowly on the claims of the various patents. By doing so, it applies the wrong standard. Transfer can be warranted by similarities in the "general technology" between two pending cases. *Broadcom Corp. v. Agere Systems, Inc.*, 2004 WL 1176168 at *1 (W.D.Wis.). *See also Broadcom Corp. v. Microtune, Inc.*, 2004 WL 503942 at *4 (W.D.Wis.) (case transferred to a district "familiar with the general silicon-based tuner technology" at issue). Intermec cites these two cases in its Opening Brief. Intermec Opening Brief, p. 7. Symbol makes no effort to dispute or distinguish them. They are a

sufficient basis for this Court to consider the general similarities between the technologies at issue in both cases. Those similarities are sufficient to warrant transfer.

CONCLUSION

For the above stated reasons, Intermec's Motion to Transfer Venue Pursuant to 28 U.S.C., § 1404(a) must be *GRANTED*.

DATED this 3rd day of June, 2005.

Respectfully submitted:

By: *Eugenia D Carter*
Attorneys for Defendant
Intermec Technologies Corp.
WHYTE HIRSCHBOECK DUDEK S.C.

Eugenia G. Carter
State Bar No. 01011447
One East Main Street, Suite 300
Madison, WI 53703-3300
(608) 255-4440 (telephone)
(608) 258-7138 (facsimile)

FREEBORN & PETERS LLP
Leland W. Hutchinson, Jr.
Carson P. Veach
Jennifer L. Fitzgerald
Jeffrey M. Hansen
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606-6677
(312) 360-6503 (telephone)
(312) 360-6572(facsimile)

#109704v1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

SYMBOL TECHNOLOGIES, INC.,

     Plaintiff,

     v.                          Case No. 05-C-0256-C

INTERMEC TECHNOLOGIES CORP.,

     Defendants.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on the 3rd day of June, 2005, a true and correct copy of Defendant Intermec Technologies Corporation's Reply Memorandum in Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(A) was served on:

**VIA HAND DELIVERY**
Jeffrey S. Ward
Shane A. Bruner
Michael Best & Friedrich LLP
One South Pinckney Street, Suite 700
Madison, WI  53703

**VIA U.S. MAIL**
Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Mitchell S. Feller
Hogan & Hartson L.L.P.
875 Third Avenue
New York, NY  10022

Susan Landphier Smolak

109446v1

JUN 0 3 2005

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SYMBOL TECHNOLOGIES, INC.,

                Plaintiff,                Case No. 05-C-0256-C

v.

INTERMEC TECHNOLOGIES CORP.,      **JURY TRIAL DEMANDED**

                Defendant.

---

### DEFENDANT INTERMEC TECHNOLOGIES CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C., § 1404(A)

---

### INTRODUCTION

This action is now the fourth lawsuit currently pending between plaintiff Symbol Technologies, Inc. ("Symbol") and defendant Intermec Technologies Corporation ("Intermec"). All three prior cases are pending in the District of Delaware. In one of those cases, Symbol has sued Intermec, claiming that the same products (bar code readers) accused of infringement in this case also infringe four other patents asserted there. *Symbol Technologies, Inc. v. Intermec Technology Corp.*, No. 05-146-SLR (D.Del. filed March 10, 2005) (hereinafter the "Symbol Delaware Action"). *See* Declaration of Arvin Danielson, ¶¶ 4-5 (copy attached to Intermec's § 1404(a) Motion as Exhibit A). *See also*, Complaint, ¶ 9 ("bar code readers"). Thus, transfer is warranted. 28 U.S.C., § 1404(a).

Symbol's choice to attack the same product group in two infringement actions raises many common issues of fact such as how Intermec's accused products function and whether sales of those products precluded any sales of Symbol products causing lost profits. These

MAY 18 2005

common questions warrant transfer and consolidation. Moreover, because Symbol is not entitled to greater recovery if it proves that Intermec's products infringed multiple claims or multiple patents than it would be if it merely proves the infringement of a single claim, the failure to consolidate this action with the Symbol Delaware Action risks inconsistent damage determinations were Symbol to succeed in proving infringement in both cases.[1]

Critically, this case, the only one filed by either party outside of Delaware, has absolutely no connection with the Western District of Wisconsin. Symbol, a Delaware corporation, is based in Holtsville, New York. Complaint, ¶ 2. The two patents in suit list inventors who, at the time of patenting, resided in New York. No document or witness having knowledge pertaining to the validity or infringement of the asserted patents appears to be located in this district. *See* Danielson Declaration, ¶ 3.

Intermec is a Washington corporation based in Everett, Washington. Declaration of Robert Rainier, ¶ 3 (copy attached to Intermec's § 1404(a) Motion as Exhibit B). Intermec has no office in this district, has never sued or been sued in Wisconsin, has attended no trade shows here and does not advertise in Wisconsin based publications. Rainier Decl., ¶¶ 6-9. Intermec employs over 2,500 employees. *Id.*, ¶ 4. Only five Intermec employees reside in Wisconsin. *Id.*, ¶ 5. Only one of those resides in this district. *Id.* Virtually all of Intermec's documents relevant to its accused products and the witnesses having knowledge of those products reside outside of this district, principally in the Seattle, Washington area. *Id.*, ¶ Danielson Decl., ¶ 3.

Until recently, Intermec had an OEM purchasing agreement with Symbol under which Intermec purchased Symbol's laser scan engines for use in Intermec's bar code scanning

---

[1] Intermec, of course, denies that any of its products infringe any Symbol patent and asserts that it has a valid license from Symbol to build its products using the bar code scanning engines that Intermec purchased from Symbol. Until this defense is proven, of course, Intermec runs the risk of inconsistent results if it must defend largely the same set of accused products in two separate infringement actions. That risk warrants transfer and consolidation.

2

products. That agreement contained a covenant which, with certain stated exceptions, precluded patent infringement suits between the two companies. On June 7, 2004, Intermec sued Matrics, Inc.—then an independent competitor of Intermec—in the District of Delaware (cause No. 04-357-GMS) for infringing certain Intermec patents on Radio Frequency Identification or "RFID" technology. In August, 2004, Symbol agreed to acquire Matrics. Thereafter, Symbol claimed that the OEM Agreement's covenant mandated Intermec's dismissal of its patent infringement claim against the former Matrics products.

When Intermec refused to dismiss its infringement claims against the Matrics products, Symbol declared the OEM Agreement terminated and began aggressively suing Intermec. On March 10, 2005, Symbol filed civil action No. 05-146-SLR seeking a declaratory judgment that it had rightly terminated the OEM Agreement because of Intermec's alleged breach arising from its continuing infringement claims against the Matrics products.

On March 10, 2005, Symbol also filed the Symbol Delaware Action asserting four patents allegedly pertaining to Intermec's bar code reader products. At least one of those patents claims aspects of bar code reading technology as an element of the claimed invention. Intermec counterclaimed for patent infringement in that action, asserting six of its own patents against Symbol. At least one of Intermec's counterclaim patents also involves bar code readers.

Thus, transfer of this action for convenience to the District of Delaware under 1404(a) is warranted, for multiple reasons. First, no material connection to this district exists. Second, this action raises common questions of law and fact with the Symbol Delaware Action. Third, judicial economy warrants transfer of this action for consolidation with the related and earlier filed Symbol Delaware Action.

Alternatively, transfer of this action for convenience of the parties and witnesses to the District of Washington, where Intermec is headquartered, is also warranted.

ARGUMENT

I.    **TRANSFER OF THIS ACTION TO DELAWARE IS COMPELLED BOTH BY THE CONVENIENCE OF THE PARTIES AND BY JUDICIAL ECONOMY.**

A motion to transfer venue is governed by 28 U.S.C., § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that this action might have been brought in the District of Delaware (where the other actions between these parties are already pending) or in the District of Washington (where Intermec is located). In deciding a motion to transfer venue for convenience, this Court must consider all of the relevant circumstances using the three statutory factors as placeholders. *Coffey v. Van Doren Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986) (three statutory factors: convenience of parties, convenience of witnesses and interests of justice). In this case, each of the factors warrants transfer of this action to the District of Delaware, or, at minimum, a transfer to the District of Washington.

First, no material events relevant to this case occurred in Wisconsin. The inventions claimed in the patents in suit were not created or developed here. The accused products were not designed and are not manufactured here. Danielson Decl., ¶¶ 6-7. These products are sold nationally. *Id.* No particular concentration of sales suggests that this District offers any advantage in access to relevant proof.

Where the forum chosen is not the site of material events, the plaintiff's choice is entitled to no special weight or deference. *United States v. Payne and Dolan, Inc.*, 2003 WL 23185881 at *3 (W.D.Wis.) (plaintiff's choice "will not receive deference" absent material events);

4

*Castleberg v. Covenant Healthcare, L.L.C.*, 2002 WL 32345613 at *2 (W.D.Wis.).  In fact, the absence of material events occurring within this District weighs in favor of transfer.  *Liberty Mutual Fire Inc. Co. v. The Nordic Group of Companies, Ltd.*, 2001 WL 34382016 at *7 (W.D.Wis.) ("Other than the fact that the original policy was issued and delivered in Wisconsin, no events, material or otherwise, took place in Wisconsin.  This factor weighs in favor of transferring venue").

The geographic convenience of the parties and of the witnesses both favor transfer.  Intermec is not aware of any potential witness who resides in this district or in the State of Wisconsin or any relevant documents which are located here.  *See* Danielson Decl., ¶ 3.  This case presents no question of Wisconsin law.  Delaware is far closer to Symbol's New York headquarters, witnesses and documents than is Wisconsin.

Second, and more critically, litigating these infringement claims in Delaware is the only way to preserve the interests of justice.  Symbol's tactic of attempting to gain leverage over Intermec by splitting its patent portfolio into multiple attacks on the same group of Intermec products filed in separate actions in different districts is wholly unfair and inappropriate.  It is well recognized that "related litigation should be transferred to a forum where consolidation is feasible." *Coffey*, 796 F.2d at 221.

Consolidation is governed by Rule 42(a), F.R.Civ.P.[2]  That rule only requires a common question of law or fact for cases to be consolidated.  "Common questions of law and fact do not have to predominate" for consolidation to be warranted.  *Saudi Basic Industries Corp. v. Exxonmobile Corp.*, 194 F.Supp.2d 378, 416 (D. N.J. 2002) (*quoting* 8 Moore's Federal

---

[2] Under Rule 42(a), of course, a prerequisite for consolidation is that the cases be pending in the same court.  Thus, it is for the transferee court to decide whether consolidation is actually warranted.  Intermec argues here only that consolidation is sufficiently feasible to warrant transfer for judicial economy under 28 U.S.C., § 1404(a).  *See Coffey*, 796 F.2d at 221 (related actions should be transferred for consolidation).

PRACTICE, § 42.10 at 42-8).   Actions "involving the same parties are apt candidates for consolidation." *Hanes Companies, Inc. v. Ronson*, 712 F.Supp. 1223, 1230 (M.D. N.C. 1988) (*quoting* C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2384, p. 263 (1971)). "Consolidation of tort actions sharing common questions of law and fact is commonplace." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).[3]

Courts have consolidated patent infringement cases involving different but related patents even when the defendants are different. *Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (D. Del. 1986). In *Cedars-Sinai*, the court ordered consolidation to avoid inconsistent results:

> Where a jury is the trier of fact on common issues of fact, it should be the *sole* determiner of those issues.  Only consolidation, before a single jury, at least on the issues of validity, enforceability and infringement, would protect the plaintiff's constitutional rights …

*Cedars-Sinai*, 111 F.R.D. at 32 (emphasis original).  In this instance, consolidation is warranted both by the economy of deciding common issues only once and to avoid subjecting Intermec to the risk of inconsistent results.  Because Intermec products accused in this Court are also accused in the Symbol Delaware Action, judicial economy is served by having only one determination of how those products—bar code readers—technically function.

The Delaware court is already well familiar with the basic technology claimed in the patents which are asserted by Symbol in the Symbol Delaware Action.  Symbol just concluded an infringement claim under the same patents against another company. *Symbol Technologies, Inc. v. Proxim, Inc.*, 1:01-CV-00801-SLR.  When Symbol filed the Symbol Delaware Action, it designated that case as "related" to the *Proxim* litigation, causing the infringement claim against Intermec to be assigned to the same judge.

---

[3] The infringement of a patent, of course, is a tortuous act.

Where the patents in two cases involve the same general technology, "consolidating the parties' dispute in front of one judge would reduce the need for duplicative time consuming tutorials...." *Broadcom Corp. v. Agere Systems, Inc.*, 2004 WL 1176168 at *1 (W.D.Wis.); *Broadcom Corp. v. Mictotune, Inc.*, 2004 WL 503942 at *4 (W.D.Wis.) (case transferred to a district "familiar with the general silicon-based tuner technology" at issue). Although there are a total of twelve patents asserted in the two cases (two by Symbol here; four by Symbol in its Delaware complaint and six by Intermec in its Delaware counterclaim) claiming many separate inventions involving several different technologies, there are sufficient technical similarities between this case and several of the patents in suit in Delaware to warrant transfer to avoid the necessity to educate two federal judges in basically the same technology.

The patents in this case address certain aspects of bar code reading and decoding technology. The Abstract of U.S. Patent No. 5,243,655 (asserted by Symbol in this case) states that the claimed invention relates to "[a] system for representing and recognizing data in machine readable graphic image form ...." The Abstract of U.S. Patent No. 5,457,308 (also asserted by Symbol in this case) states that it relates to "[a] method for combining decoded scan fragments" of a bar code to permit the code to be read from the fragments.

U.S. Patent No. 5,892,971 (asserted by Intermec in Delaware) claims a portable battery-powered hand-held data processing device incorporating "an indicia reader input system" in combination with other elements. Claim 1, '971 Patent. One "indicia reader" disclosed in the '971 Patent is a bar code reader. *See* '971 Patent, Col. 23, Lns. 29-35. Because of the "all elements" rule of patent cases, it will be necessary to determine whether Symbol's products involve "an indicia reader input system" of the type claimed by Intermec in the '971 Patent. *See RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003)

7

("there can be no infringement ... if even one limitation of a claim or its equivalent is not present"). Thus, Symbol may argue in Delaware that its bar code readers are sufficiently different from the "indicia reader input system" claimed in the '971 Patent to avoid infringement on that basis. If so, the workings of bar code readers will be relevant to resolving of the Symbol Delaware Action.

U.S. Patent No. 5,157,687 (asserted by Symbol against Intermec in Delaware) claims a combination including "a hand-held bar code reader" having:

> a light source for directing light toward a bar code symbol to be read and a light detector responsive to reflected light from a bar code symbol to generate an electrical signal containing bar code data

'687 Patent, Claim 1. Again, understanding any differences between the reader claimed in the '687 Patent and other methods of reading bar codes that may be incorporated in Intermec's bar code reader products may be an important issue in resolving claims made under the '687 Patent. Although the Symbol Delaware Action also involves other patents raising other technical issues, the technical similarities described above are uncontroverted.

More importantly, however, even were this Court to determine that the patents asserted here are so different from the patents asserted in the Symbol Delaware Action that the underlying technologies have nothing material in common, transfer for consolidation would still be warranted because of common damage questions and to avoid exposing Intermec to the risk of inconsistent damage decisions. Such common questions arise whenever the same products are accused of infringing multiple patents.

Regardless whether Intermec's bar code readers infringe one claim of any one of Symbol's patents or every claim of every Symbol patent, Symbol could only be entitled to one damage award. It is well-established that damages for patent infringement do not increase with the number of claims infringed. *Square Liner 360 Degrees, Inc. v. Chisum*, 1981 WL 48168,

8

215 U.S.P.Q. 1110, 1119 (D. Minn. 1981) (rejecting plaintiff's argument that special verdict omitting some claims warranted overturning damages verdict as insufficient: "Damages are not affected by the number of claims infringed. Plaintiff's rationale is contrary to law…").

The patent owner has the right to exclude an infringing product from the market. His damages for breach of that exclusion right are "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). Thus, where the patent owner has multiple rights to exclude the same product from the same market (*i.e.*, the accused product infringes more than one patent claim), the patent owner still has the right to only one recovery:

> To allow recovery of a royalty on Aro's sales after receipt of the equivalent of a royalty on Ford's sales, or to allow any recovery from Aro after receipt of full satisfaction from Ford, would not only disregard the statutory provision for recovery of 'damages' only, but would be at war with virtually every policy consideration in this area of the law.

*Aro*, 377 U.S. at 510 (only "nominal damages" available against contributory infringer because full recovery already received from the direct infringer).

Thus, where a single patent owner attacks a single defendant's product or group of products with different patents in different actions—as Symbol has done here—common questions of law and fact abound. If the damages are to be measured by lost profits, the patent owner must prove what sales of its own products were lost because of the sales of the infringing products. *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 653 (Fed.Cir. 1985) (patent owner must prove that he "would have made the sale of a product 'but for' the infringement"). "This rule calls for a reconstruction of the way the market would have developed in the absence of infringement." *Grain Processing Corp. v. American Maize Products Co.*, 979 F.Supp. 1233, 1236 (N.D. Ind. 1997). Thus, no matter how many Symbol patents or

9

claims an Intermec scanner product may have infringed, Symbol cannot recover more than the profit value of its own lost own lost sales. *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed.Cir. 1989) (accepting *Panduit* test for lost profits which includes "the amount of profit [the patentee] would have made.").

As the *Aro* Court demonstrated, the same limitation applies under a reasonable royalty analysis. 377 U.S. at 510 (no additional royalty from contributory infringer where full infringement recovery from direct infringer already received). "A reasonable royalty is generally an amount which a person desiring to manufacture and sell a patented article as a business proposition would be willing to pay as a royalty to the patent owner." *Armco, Inc. v. Republic Steel Corp.*, 707 F.2d 886, 891 (6th Cir. 1983). Where the patented article is protected by more than one patent, the value of a reasonable royalty on less than all of the patents required to legally make, use and sell that article is obviously zero "as a business proposition." No one would willingly pay any meaningful price for the license to one patent when licenses to additional patents are also necessary to legally manufacture and sell the (partially) licensed article. Where the accused product is covered by multiple patents, the only reasonable royalty greater than zero is one paid for the right to manufacture the article free and clear of all applicable patent claims.

Thus, common questions of law and fact concerning at least damages and the working of Intermec's accused products arise because Symbol has already accused the same products addressed in this action of infringing other patents in the earlier filed Symbol Delaware Action. "One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results." *International Paving Systems, Inc. v. Van-Tulco, Inc.*, 806 F.Supp. 17, 22 (E.D. N.Y. 1992). The only effective way to avoid conflicting results given the facts presented is

10

to grant the instant motion. *Cedars-Sinai*, 111 F.R.D. at 32 (single jury must determine common fact issues to avoid inconsistent results). These factors strongly suggest that transfer and consolidation are warranted.

Intermec recognizes that the presence of common issues, while a prerequisite to consolidation, does not automatically require consolidation. *Rohm & Haas Co., v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D. Del. 1981). The transferee court will also have to consider and balance any prejudice to Symbol which would result from consolidation with the Symbol Delaware Action. Intermec does suggest, however, that the presence of common issues is sufficient to warrant transfer. *See Coffey*, 796 F.2d at 221 (transfer is warranted if consolidation is shown to be "feasible"). Arguments about whether consolidation is in fact warranted under the balancing test are for the transferee court to decide.

Regardless, the possibility of prejudice to Symbol from a transfer and consolidation is obviously remote in this case. Symbol could have easily brought all infringement claims directed against the same Intermec products in a single action. Instead, it decided to forum shop. One reason for Symbol's conduct might be to gain leverage over Intermec by needlessly increasing its defense costs by multiplying pending actions. Because such a tactic is illegitimate, precluding its success cannot constitute undue prejudice to Symbol. *See* 28 U.S.C., § 1927.

Another reason might be Symbol's attempt to "end-run" the schedule of the Symbol Delaware Action by obtaining an infringement judgment from this Court (a relatively fast docket where Intermec has not yet filed any infringement counterclaims) before judgment in Delaware (where Intermec has filed infringement counterclaims and where the case may proceed more slowly because 10 patents are involved) can be rendered. Because this reason is also not a

legitimate concern, however, it also does not constitute the type of prejudice that would prevent consolidation upon transfer.

CONCLUSION

For the above stated reasons, Intermec's Motion to Transfer Venue Pursuant to 28 U.S.C., § 1404(a) must be *GRANTED*.

DATED this *18* day of May, 2005.

Respectfully submitted:

By: _____

Attorneys for Defendant
Intermec Technologies Corp.
WHYTE HIRSCHBOECK DUDEK S.C.

Eugenia G. Carter
State Bar No. 01011447
One East Main Street, Suite 300
Madison, WI 53703-3300
(608) 255-4440 (telephone)
(608) 258-7138 (facsimile)

FREEBORN & PETERS LLP
Leland W. Hutchinson, Jr.
Carson P. Veach
Jennifer L. Fitzgerald
Jeffrey M. Hansen
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606-6677
(312) 360-6503 (telephone)
(312) 360-6572(facsimile)

109070

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SYMBOL TECHNOLOGIES, INC.,

                Plaintiff,                Case No. 05-C-0256-C

v.

INTERMEC TECHNOLOGIES CORP.,

                Defendant.

## DEFENDANT INTERMEC TECHNOLOGIES CORPORATION'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C., § 1404(A)

Now comes defendant, Intermec Technologies Corporation, and for its Motion to Transfer Venue Pursuant to 28 U.S.C., § 1404(a), respectfully states as follows:

      1.      This action is the fourth now pending between plaintiff Symbol Technologies, Inc. ("Symbol") and defendant Intermec Technologies Corporation ("Intermec").

      2.      The Intermec products accused of patent infringement in this action—bar code readers—are also accused by Symbol of infringing other patents in a prior filed pending action. *Symbol Technologies, Inc. v. Intermec Technologies Corporation*, No. 05-146-SLR (D.Del. filed March 10, 2005) (hereinafter the "Symbol Delaware Action"). *See* Declaration of Arvin Danielson, ¶¶ 4-5 (copy attached to as Exhibit A). *See also*, Complaint, ¶ 9 ("bar code readers").

      3.      This action has absolutely no connection to this District. Intermec is a Washington corporation based in Everett, Washington. Declaration of Robert Rainier, ¶ 3 (copy attached as Exhibit B).

1

MAY 1 8 2005

4.      Intermec has no office in this district, has never sued or been sued in Wisconsin, has attended no trade shows here and does not advertise in Wisconsin based publications. Rainier Decl., ¶¶ 6-9.

5.      Intermec employs over 2,500 employees. *Id.*, ¶ 4. Only five Intermec employees reside in Wisconsin. *Id.*, ¶ 5. Only one of those resides in this district. *Id.*

6.      Virtually all of Intermec's documents relevant to its accused products and the witnesses having knowledge of those products reside outside of this district, principally in the Seattle, Washington area. *Id.*, ¶ Danielson Decl., ¶ 3.

7.      The inventions claimed in the patents in suit were not created or developed here. The accused products were not designed and are not manufactured here. Danielson Decl., ¶¶ 6-7. These products are sold nationally. *Id.*

8.      For the convenience of the parties and the witnesses and in the interests of justice, this action should be transferred to the District of Delaware for potential consolidation with the Symbol Delaware Action.

9.      In the alternative, this action should be transferred to the District of Washington.

DATED this _18_ day of May, 2005.

                                        Respectfully submitted:

                                        By: _Eugenia G. Carter_
                                        Attorneys for Defendant
                                        Intermec Technologies Corp.
                                        WHYTE HIRSCHBOECK DUDEK S.C.

                                        Eugenia G. Carter
                                        State Bar No. 01011447
                                        One East Main Street, Suite 300
                                        Madison, WI  53703-3300
                                        (608) 255-4440 (telephone)
                                        (608) 258-7138 (facsimile)

2

FREEBORN & PETERS LLP
Leland W. Hutchinson, Jr.
Carson P. Veach
Jennifer L. Fitzgerald
Jeffrey M. Hansen
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606-6677
(312) 360-6503 (telephone)
(312) 360-6572(facsimile)

109069

3

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SYMBOL TECHNOLOGIES, INC.,

                Plaintiff,

    v.

INTERMEC TECHNOLOGIES CORP.,

                Defendant.

OPINION AND
ORDER

05-C-256-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Symbol Technologies, Inc. seeks declaratory, injunctive and monetary relief against defendant Intermec Technologies Corp. for infringing U.S. Patents Nos. 5,243,655 and 5,457,308, relating to bar code technology. The case is before the court on defendant's motion to transfer the case under 28 U.S.C. § 1404(a) and plaintiff's motion to file a sur-reply declaration in response to defendant's reply brief in support of its motion to transfer. Subject matter jurisdiction is present under 28 U.S.C. §§ 1331 and 1338.

I will grant plaintiff's motion to file a sur-reply and consider the parties' arguments concerning the applicability of a purchasing agreement between them and whether the need for a consistent interpretation of that agreement warrants a transfer. Although I am not convinced that the patents in dispute overlap those pending in suits filed in the District

1

Copy of this document has been
provided to: _counsel_

this _14_ day of _July_ 20_05_
by _Vogel_
S. Vogel, Secretary to
Judge Barbara B. Crabb

Court for the District of Delaware, it does appear that it will be necessary in this case and in the Delaware cases to interpret the parties' purchasing agreement in order to determine whether and to what extent the parties agreed to forgo infringement suits against each other. I conclude therefore that the interests of justice would be served by transferring this case to the district court in Delaware.

From the facts alleged in the complaint, the exhibits attached to defendant's reply brief in support of its motion to transfer venue and the facts averred in the affidavits submitted by the parties, I find for the sole purpose of deciding this motion that the following facts are undisputed and material.

## FACTS

Plaintiff Symbol Technologies, Inc. is a Delaware corporation with its headquarters in Holtsville, New York. Plaintiff is a global leader in secure mobile information systems that integrate application-specific hand-held computers with wireless networks for data, voice and bar code data capture. Plaintiff's product lines include items such as bar code scanners, advanced data capture products, radio frequency identification technology, hand-held and fixed mount mobile computers and wireless local and wide-area networks. Plaintiff is registered to do business in the state of Wisconsin.

Defendant Intermec Technologies Corp. is incorporated in the state of Washington

2

and has its principal place of business in Everett, Washington. Defendant designs, manufactures and sells portable data collection equipment, including bar code scanning and reading devices. Defendant is registered to do business in Wisconsin and regularly transacts business in Wisconsin.

In addition to suing defendant in this court, plaintiff has sued defendant for infringement of four different patents in the District of Delaware, U.S. Patent Nos. 5,029,183, 5,479,441, 5,157,687, and 6,473,449, all of which relate to power saving modes of operation for wireless local area networks and techniques developed for sending data from point to point in a wireless network. Although the technologies that are the subject of the lawsuits in both Wisconsin and Delaware may be used together, as for example, by incorporating a bar code reader in a wireless network, they are distinct, just as a car radio's technology is wholly different from a car engine's technology, notwithstanding the fact that they are both used in a car.

Plaintiff and defendant entered into a purchasing agreement regarding plaintiff's bar code reader and scanner products. The agreement includes a forum selection clause under which the parties agree to try all disputes relating to the agreement in Delaware. For purposes of this decision, the crucial section is § 18(k), which reads:

> Covenants. During the Term of the Agreement each Party shall not sue (or bring a counterclaim against) the other party for any claim of infringement . . . of any patent, whether now or hereinafter in existence, against or relating

3

to any product except for (i) bar code readers to the extent that they use CCD
sensor technology, and (ii) RFID Reader Products and RFID Tags except to
the extent that they read bar codes.

The parties' agreement is specified to last from January 1, 2004 to December 31,

2006. In § 9(d), it provides that accrued rights and obligations survive termination.


OPINION

### A. Plaintiff's Motion for Leave to File Sur-reply

As a general rule, arguments not raised until the reply brief are deemed waived.

Carter v. Tennant Co., 383 F.3d 673, 679 (7th Cir. 2004) (arguments presented for first

time in reply brief are deemed waived) (citing Aps Sports Collectibles, Inc. v. Sports Time,

Inc., 299 F.3d 624, 631 (7th Cir. 2002)). In this case, however, I can consider the new

arguments raised by defendant, because I am granting plaintiff's request to file a sur-reply

brief, giving plaintiff an opportunity to explain why it believes that the new arguments are

without merit.


### B. Defendant's Motion for Change of Venue

Defendant has moved to transfer this case to the District of Delaware because

plaintiff has suits pending in that district against defendant for infringement of four different

patents. Plaintiff has asked the court in Delaware to declare that plaintiff was entitled to

4

terminate the purchasing agreement between the parties, thus permitting it to file suits for patent infringement despite the covenant in the agreement not to sue; defendant has filed a counterclaim in that suit for breach of contract. According to defendant, the products at issue in the Delaware action overlap the products at issue in this action and both cases will involve certain provisions of the purchasing agreement, such as the provisions addressing immunity from infringement suits and the forum selection clause. Defendant argues that transfer is justified to obtain consistent determinations regarding the applicability of the purchasing agreement and of the covenant not to sue in particular. Plaintiff agrees that the purchasing agreement provides defendant immunity from infringement for products that use scan engines purchased from plaintiff. Decl. of Aaron Bernstein, dkt. #17, at ¶5. However, plaintiff contends that such products are not at issue in this case, so the purchasing agreement and its forum selection clause do not apply.

In a motion to transfer venue brought pursuant to 28 U.S.C. § 1404(a), the moving party bears the burden of establishing that the transferee forum is "clearly more convenient." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986). In weighing the motion, a court must decide whether the transfer serves the convenience of the parties and witnesses and will promote the interest of justice. 28 U.S.C. 1404(a); Coffey, 796 F.2d at 219-20; Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248, 254 (7th Cir. 1996) (question is whether plaintiff's interest in choosing forum is outweighed by either

convenience concerns of parties and witnesses or interest of justice). The court should view these factors as placeholders among a broader set of considerations and evaluate them in light of all the circumstances of the case. Coffey, 796 F.2d at 219 n.3. Other courts have found that such broader considerations include the situs of material events, ease of access to sources of proof and plaintiff's choice of forum. Harley-Davidson, Inc. v. Columbia Tristar Home Video, 851 F. Supp. 1265, 1269 (E.D. Wis. 1994); Kinney v. Anchorlock Corp., 736 F. Supp. 818, 829 (N.D. Ill. 1990). "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," Coffey, 796 F.2d at 221, such as whether a transfer would help the litigants receive a speedy trial and whether a transfer would facilitate consolidation of related cases. Id.

It is unclear why Wisconsin would be more convenient to try this case than Delaware; defendant contends that Delaware is geographically closer to plaintiff's New York headquarters, witnesses and documents. Plaintiff points out that its choice of forum is entitled to great deference. However, courts have held that if plaintiff's chosen forum is not the situs of material events, a plaintiff's choice has weight equal to the other factors and will not receive deference. Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955) (plaintiff's choice of forum given less deference if few operative facts occurred in that forum); see also Carillo v. Darden, 992 F. Supp. 1024, 1026 (N.D. Ill. 1998); Sanders v. Franklin, 25 F. Supp. 2d 855, 858 (N.D. Ill. 1998). Nothing in the record

6

suggests that material events occurred in Wisconsin. Because it is questionable that Wisconsin is particularly convenient to either party, I will focus on the interest of justice factor exclusively in deciding whether to transfer this case to the District of Delaware.

It is undisputed that plaintiff has sued defendant for infringement of U.S. Patent Nos. 5,029,183, 5,479,441, 5,157,687, and 6,473,449 in the District of Delaware. Defendant is adamant about the possibility of overlap between the technologies at issue in both the Wisconsin and Delaware actions. It suggests, for example that a bar code reader (the technology at issue in Wisconsin) may be incorporated into a wireless network (the technology at issue in Delaware). Given this overlap, the court in the Delaware action will most likely have to address the importance of the bar code technology in that action and in doing so, decide whether the terms of the purchasing agreement apply. I find this argument dubious, given plaintiff's statement that it is not suing defendant on any of defendant's products using plaintiff's scan engines but I need not decide whether it is correct because the deciding factor is the need to construe the purchasing agreement. Some court will have to determine whether the agreement has been terminated validly, whether the covenant between the parties survives termination and if it does, whether the covenant applies to the technology at issue in this case. It would be best for the parties and for the resources of the federal courts, considered as a whole, to have one construction applicable to all the disputes between the parties. Thus, I conclude that the interests of justice weigh heavily in favor of

7

a transfer, particularly because the agreement contains a forum selection clause. <u>See, e.g.</u>, <u>Stephan v. Goldinger</u>, 325 F.3d 874, 878-79 (7th Cir. 2003) (contractual venue clauses generally are valid) (citing <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585, 593-95 (1991)); <u>Heller Financial, Inc. v. Midwhey Powder Co.</u>, 883 F.2d 1286, 1290-91 (7th Cir. 1989) (forum selection clause does not offend due process so long as it is freely negotiated and is not unreasonable and unjust). Although the Delaware court will be free to consolidate the cases or not, a transfer of the case to that court will would allow consolidation if the court should deem it appropriate. <u>Coffey</u>, 796 F.2d at 221 ("related litigation should be transferred to a forum where consolidation is feasible").

## ORDER

IT IS ORDERED that

1. Plaintiff Symbol Technologies, Inc.'s motion to file a sur-reply is GRANTED;

2. Defendant Intermec Technologies Corp.'s motion to transfer the case to the

United States District Court for the District of Delaware is GRANTED.

Entered this 14th day of July, 2005.

BY THE COURT:

*Barbara B. Crabb*

BARBARA B. CRABB
District Judge

9

## CERTIFICATE OF SERVICE

I, Arthur G. Connolly, III, hereby certify that on August 15, 2005, I caused to be electronically filed a true and correct copy of the foregoing Motion and Order for Admission *Pro Hac Vice* with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

Jack B. Blumenfeld, Esquire
MORRIS NICHOLS ARSHT & TUNNELL
1201 N. Market Street
Wilmington, DE 19801
[jblumenfeld@mnat.com]

I further certify that on August 15, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel, and that a copy was served on the following non-registered participants on the same date in the manner indicated:

### *By FedEx*

Frederick A. Lorig, Esquire
Bruce R. Zisser, Esquire
BRIGHT & LORIG, P.C.
633 West Fifth Street
Suite 3330
Los Angeles, CA 90071

Carson Veach, Esquire
Leland W. Hutchinson, Jr., Esquire
Jennifer Fitzgerald, Esquire
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

　　　/s/ Arthur G. Connolly, III
CONNOLLY BOVE LODGE & HUTZ LLP
Kevin F. Brady (#2248)
Arthur G. Connolly, III (#2667)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9141
*Attorneys for Plaintiff, Symbol Technologies, Inc.*